[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDING OF DUE DILIGENCE AND SUFFICIENCY OF NOTICE
On December 18, 2002, the court held a hearing on the plaintiff attorney general's Motion for a Finding of Due Diligence and Adequate Notice. The court heard testimony from three witnesses: Attorney William Riiska, Attorney Barbara Taylor and Paige Adams, a paralegal specialist. Both attorneys were retained by Sharon Hospital and Ms. Adams is employed in the attorney general's office. The plaintiff submitted five volumes containing 188 gift instruments, an analysis of those instruments and a funds value report.
The plaintiff seeks a finding of due diligence as to the documentation of charitable gifts proposed for transfer to the Sharon Area Community Health Founder (SACHF) and a finding of sufficient notice to the public and to any potential claimants of the above mentioned transfer.
Under General Statutes § 19a-486c (a) as amended by P.A. 01-186, the attorney general shall disapprove a proposed transfer as not in the public interest if he determines that one or more certain conditions exist including the following:
 (8) a sum equal to the fair market value of the nonprofit hospital's assets (A) is not being transferred to one or more persons to be selected by the Superior Court for the judicial district where the nonprofit hospital is located who are not affiliated through corporate structure, governance or membership with either the nonprofit hospital or the purchaser, and (B) is not being used for one of the following purposes: (i) For appropriate charitable health care purposes consistent with the nonprofit hospitals original purpose, (ii) for the support and promotion of health care generally in the affected community, or (iii) with respect to any assets held by the nonprofit hospital that are subject to a use restriction imposed CT Page 10 by a donor, for a purpose consistent with the intent of said donor or (9) the nonprofit hospital or the purchaser has failed to provide the Attorney general with information and data sufficient to evaluate the proposed agreement adequately, provided the Attorney general has notified the nonprofit hospital or the purchaser of the inadequacy of the information or data and has provided a reasonable opportunity to remedy such inadequacy.
(Emphasis added.)
See Carl J. Herzog Foundation v. University of Bridgeport, 243 Conn. 1, 7
(1997) (charitable gifts with stated purposes are generally enforceable only at the instance of the attorney general). To ensure compliance with this statutory provision, the court considers whether the parties have exercised due diligence. "Due diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Kubeck v. Foremost Foods Co.,190 Conn. 667, 672 (1983).
Based upon the evidence presented to the court and the applicable law, the court concludes that there has been due diligence by Sharon Hospital of the documentation of the gifts as presented to the attorney general. The witnesses testified to collecting all documents relating to gifts made to Sharon Hospital, marshaling all records of those gifts, reviewing the gift instruments and performing a legal analysis of each gift. In reviewing the gift instruments Attorneys Taylor and Riiska categorized each gift and looked for reverters or giftovers. This analysis was affirmed by the attorney general's office. No reverters clauses were found, and the only gifts containing giftover provisions are specifically named in the Amended Complaint.[1] Accordingly, the court finds that the Sharon Hospital has acted with due diligence in its research and documentation of the gifts so that the court will be able to address its statutory obligations under General Statutes § 19a-486c (a) (8).
The attorney general also seeks a finding that sufficient notice was provided to the public and any interested parties during the review proceedings concerning the sale of the Sharon Hospital conducted by the attorney general and the office of health care access under General Statutes § 19a-486 et seq. Based upon the testimony and documentation provided at the hearing the court finds the following facts.
On February 1, 2001, Sharon Hospital, Inc., Sharon Corporation, and West Sharon Corporation ("Sharon Hospital") filed with the attorney CT Page 11 general and the office of health care access a "Notice and Application" ("application") pursuant to General Statutes § 19a-486a (b), regarding the sale of Sharon Hospital to Essent Healthcare of Connecticut, Inc. The application was supplemented on April 25, 2001. The full application and supporting documents (five volumes of wills, trusts, and gift instruments) were then made available for inspection and copying by members of the public during business hours at the attorney general's office, the office of health care access, Sharon Hospital, the Hotchkiss Public Library, and at the Scoville Memorial Library in Salisbury. Information about the transaction was posted on the attorney general's official website and constructive notice was provided to the public by way of publication of numerous newspaper notices regarding the transaction and upcoming public hearings.[2] After publication of the notices of hearings, the attorney general and the commissioner of health care access held a joint hearing at the Hotchkiss School on June 12, 2001. On July 10, 2001, the office of health care access held a technical hearing at the legislative office building in Hartford, Connecticut. Notice of these meeting was published in various regional newspapers. On August 14 and 15, 2001, the attorney general held a two day technical hearing at the Sharon Town Hall. Legal notice of these meeting was published in various regional newspapers as well.
Attached to its motion for a finding of due diligence and adequate notice, the attorney general provided an affidavit of Paige Adams, paralegal specialist at the office of the attorney general, who was the clerk and keeper of the official record of In re: The Purchase of Sharon Hospital, Inc. by Essent Healthcare of Connecticut, Inc. (A.G. Docket No. 01-486-01). In this capacity, Ms. Adams filed and placed into the official record of the case a copy of each pleading, submission and document filed in the matter including copies of documents requesting newspaper notice. Attached to the affidavit are four exhibits the attorney general has provided: a letter of Patricia A. Gerner, from the office of health care access dated May 1, 2001, requesting newspaper publication of a summary of the proposed transaction pursuant to General Statutes § 19a-486 a (c); the requests by the office of health care access dated May 23, 2001, for newspaper publication of notice of the joint hearing of the attorney general and commissioner to be held on June 12, 2001; the request by the office of health care access dated June 11, 2001, for newspaper publication of notice of its technical hearing to be held on July 10, 2001; and the request by the office of the attorney general dated July 19, 2001, for publication of notice of his technical hearings to be held on August 14 and 15, 2001.
General common law requirements of notice are dependent on the nature of the case. "The fundamental requirements of due process are an CT Page 12 effective opportunity to be heard and proper notice thereof. . . . There is no hard and fast rule defining what constitutes proper notice; rather; due process requires that the procedure involved must be appropriate to the nature of the case." (Citation omitted; internal quotation marks omitted.) Fleischmann v. Planning Zoning,38 Conn. Sup. 590, 591-92, appeal dismissed, 461 U.S. 950,103 S.Ct. 2419, 77 L.Ed.2d 1309 (1982).
General Statutes § 19a-486a provides in pertinent part: "(b) Prior to any transaction described in subsection (a) of this section, the nonprofit hospital shall give notice to the commissioner and the attorney general by serving it on them by certified mail, return receipt requested. . . . "and "(c) Not later than ten days after receipt of a notice under this section, the commissioner shall publish a summary of such agreement in a newspaper of general circulation where the nonprofit hospital is located." General Statutes § 19a-486e provides: "Prior to making any decision to approve or disapprove a proposed agreement requiring notice under section 19a-486a, the Attorney general and the Commissioner of Health Care Access shall jointly conduct one or more public hearings, one of which shall be in the primary service area of the nonprofit hospital. . . . At least ten days before conducting the public hearing, the Attorney general and the commissioner shall provide notice of the time and place of the hearing through publication in one or more newspapers of general circulation in the affected community." Therefore, the statute has essentially three notice requirements: 1) The filing of a notice and application with the attorney general and commissioner of health care access; 2) a summary of the agreement to be published no later than ten days after receipt; and 3) a joint hearing to be held in the affected area. The steps taken by the attorney general and the office of health care access along with the supporting documentation filed establishes full compliance with the notice requirements of the statute.
A charitable trust or gift is seen as being devoted to charitable purposes forever.[3] It is the role of the attorney general to protect and represent the public in the oversight of charitable donations. General Statutes § 3-125, entitled "Duties of Attorney general; deputy; assistants; associate attorneys general," states that "[H]e shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes." It is well established that once the charitable trust is established, absent a reversion, neither the settlor nor his heirs have any right to intervene. "As a matter of common law, when a settlor of a trust or a donor of property to a charity fails specifically to provide for a reservation of rights in the trust or gift instrument, neither the donor nor his heirs have any standing in court in a proceeding to compel the CT Page 13 proper execution of the trust. . . ." (Internal quotation marks omitted.) Carl J. Herzog Foundation, Inc. v. University of Bridgeport, supra,243 Conn. 8. When the initial gift purpose fails, the application of the rule of cy pres allows the court to reassign the gift or trust to a purpose as near as possible to its original intent. Consent of, or notice to, the donor is not required when applying the doctrine. See Carl J.Herzog Foundation, Inc. v. University of Bridgeport, supra, 243 Conn. 10, n. 8.
The extensive gift analysis performed by the hospital and the attorney general of the five volumes of gift instruments shows no reverter clauses in the trusts and gifts involved in this transaction and those with giftover provisions have been identified and named. Gifts and trusts intended for the benefit of a community hospital are charitable in nature; therefore the attorney general alone has standing to oversee the conversion of those funds when the initial gift fails. The court finds that the statutory requirements of notice have been met. The court further finds that because of the nature of charitable gifts and the role of the attorney general in protecting them, no notice is necessary beyond that required by the statute.
Accordingly, the Court finds that there has been due diligence as to the gifts proposed for transfer and that there has been sufficient notice to the public and potential claimants of the proposed transfer.
 ___________________ DiPentima, J.