STEVEN EDELMAN *v.* DAVID PAGE ET AL.
(AC 30547)

DiPentima, Harper and Lavine, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 7, 2009—officially released August 17, 2010

*Steven Edelman,* pro se, the appellant (plaintiff).

*Matthew B. Beizer,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendant Lonnie Braxton et al.).

*Opinion*

LAVINE, J. The pro se plaintiff, Steven Edelman, appeals from the judgment of the trial court dismissing his action against certain defendants (state defendants)[1] for lack of personal jurisdiction. Although the plaintiff raised a number of claims in his appeal,[2] the pivotal

---

[1] The state defendants are Lonnie Braxton and Keith Currier, assistant state's attorneys; Rene Barbeau, inspector for the office of the state's attorney; state's attorney Mark Solak; Superior Court judge, Hon. Francis Foley; Donald Aitken, William Bundy and James Powers, state police officers; Henry Lee and Arthur Spada, department of public safety commissioners; George Luther, department of public safety deputy commissioner; Christopher Laux, state building inspector; Janet Ainsworth, Dawn Carnese and Christopher Arciero, attorneys for the department of public safety; and Leo Belval, Louis Free, Michael Macri, Marjorie Shansky, Philip Burton, John Butkus, James Doherty, Robert Hanbury, Donald Harwood, Daniel Herzig, Thomas Hunter, Roger Langlois, Debbie Sampson, Laurence Ford, John Vendetta, Lawrence Tryon, Glenn Neilson and Robert Musheno, members of the department of public safety codes and standards committee.

The following individuals also were named as defendants but are not parties to this appeal: David Page, Windham County deputy sheriff; Donald Schultz, Windham building officer; Windham attorneys Richard Cody and Jason Westcott; and Walter Pawelkiewicz, John Lescoe and Michael Paulhus, first selectmen of Windham.

[2] In his brief, the plaintiff stated the following claims:

"1. Did granting a *Motion to Dismiss* filed after the time period allowed by [Practice Book] § 10-8 involve the commission of *plain error* and implicate *State* v. *Golding,* [213 Conn. 233, 239–40, 567 A.2d 823 (1989)]?

"2. With the State Defendants sued in both their individual and official capacities but not challenging the sufficiency of official capacity service made upon them, did the Trial Court err by holding that the Plaintiff needed to prove official capacity service sufficiency to preserve an official capacity suit?

"3. By regarding as relevant only a post-remand State court *Motion to Dismiss* that alleged service insufficiency for the first time, did the Trial

issue is whether the court improperly granted the state defendants' motion to dismiss for lack of personal jurisdiction due to insufficient service of process. We affirm the judgment of the trial court.

The following facts underlie the present litigation. "While driving by the [plaintiff's] house, Donald Schultz, a building official for the town of Windham, noticed that part of the [plaintiff's] roof was being replaced. After confirming that the [plaintiff] did not have a building permit, Schultz issued a stop work order and prepared a warrant for the [plaintiff's] arrest. The [plaintiff] was arrested, tried and found guilty of performing reroofing work without a permit. He was sentenced to ninety days incarceration and fined $500." *State* v. *Edelman*, 64 Conn. App. 480, 482, 780 A.2d 980 (2001), appeal dismissed, 262 Conn. 392, 815 A.2d 104 (2003). On appeal, this court reversed the plaintiff's conviction, concluding that the denial by the trial court, *Foley, J.*, "of the [plaintiff's] timely request to poll the jurors individually requires automatic reversal of the judgment." Id., 484. On October 24, 2003, the state entered a nolle prosequi.

The plaintiff brought the present action in September, 2006. In his complaint, the plaintiff alleged violations of the first, fourth, eighth and fourteenth amendments to the constitution of the United States, malicious prosecution, trespass, intentional and negligent infliction of emotional distress, libel, slander and abuse of process

Court err by treating as a nullity prior federal proceedings implicating a forfeiture of both federal and State insufficient service defenses?

"4. By allowing the State Defendants to benefit from their own removal error and concealment of an insufficient service defense, did the Trial Court render a decision contrary to *equitable estoppel* doctrine and overlook surprise and injustice prohibited by [Practice Book] § 1-8?

"5. With an insufficient service defense already forfeited in federal court, did the subsequent Trial Court dismissal for service insufficiency constitute an outcome differential incompatible with the *Erie Doctrine*?" (Emphasis in original.)

against forty defendants. He alleged facts related to his arrest for failure to secure a building permit to replace his roof. On April 1, 2008, the state defendants filed a motion to dismiss the action against each of them for lack of personal jurisdiction due to insufficient service of process, as none of them were served at their respective usual places of abode pursuant to General Statutes § 52-57 (a). In ruling on the state defendants' motion to dismiss, the court found that the parties did not dispute that the state defendants were sued in their individual capacities and that service was made by leaving the writ of summons and complaint with a secretary in the office of the attorney general. At the hearing on the motion to dismiss, counsel for the plaintiff admitted that "[t]here's no sufficient process in this case."[3] The plaintiff did not dispute that the state defendants were not served at their usual places of abode or that service on the secretary in the attorney general's office was improper. Rather, the plaintiff argued that the state defendants had waived their right to contest the insufficient service of process. The plaintiff's argument is predicated on the efforts of the remaining nonstate defendants or "Windham defendants" to remove this action to the United States District Court for the District of Connecticut.[4]

---

[3] Counsel representing the plaintiff subsequently withdrew, and the plaintiff has proceeded as a self-represented party.

[4] Prior to the commencement of this action, the plaintiff had brought two actions against all of the defendants in the United States District Court for the District of Connecticut. See *Edelman* v. *Page*, United States District Court, Docket No. 3:06-CV-1366 (DJS) (D. Conn.); *Edelman* v. *Braxton*, United States District Court, Docket No. 3:01-CV-01087 (DJS) (D. Conn.).

On September 1, 2006, the defendant David Page, Windham County deputy sheriff, sought to remove the trial court action to the United States District Court where the two federal actions were pending. The plaintiff opposed the removal, arguing that Page had failed to join all of the defendants in the removal petition. Prior to Page's filing of the removal petition, the state defendants took no action in this matter and did not file appearances. The assistant attorney general representing the state defendants, however, filed an appearance in the District Court and a motion to dismiss the action on the basis of the prior pending action doctrine. The District Court "rejected

During argument on the state defendants' motion to dismiss, the plaintiff argued that the state defendants were estopped from raising the personal jurisdiction issue or that they had waived their right to contest the insufficient service of process by failing to raise the claim in the District Court; see footnote 4; and that the motion to dismiss was not timely. The court rejected the plaintiff's arguments, citing Practice Book § 10-30,[5] which requires that a motion to dismiss be filed within thirty days of the filing of an appearance. The court found that an assistant attorney general had filed an appearance and the motion to dismiss on April 1, 2008.[6] The court also found that the state defendants had not filed anything in the Superior Court prior to the defendant David Page's effort to remove the case to the District Court. Because the state defendants' motion to dismiss was timely filed and the plaintiff conceded that service of process was insufficient, the court granted the state defendants' motion to dismiss.

The plaintiff, then representing himself, filed a motion to reargue the motion to dismiss, claiming that the state defendants had been sued in their official capacities. The plaintiff failed to raise this claim in his objection to the motion to dismiss or at the time the court had heard oral arguments on the motion to dismiss. The

the defendants' position that they all consented to removal and remanded the case" to the Superior Court. See *Edelman* v. *Page*, supra, United States District Court, Docket No. 3:06-CV-01366 (DJS).

[5] Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ."

[6] The plaintiff argued that the appearance was not filed within thirty days of the remand, which occurred on February 15, 2008. That is when the District Court ordered the remand, but the case was not received by the Superior Court until February 29, 2008. The trial court found that the assistant attorney general's appearance and the motion to dismiss were filed within thirty days of the remand because the thirtieth day fell on a Sunday and the motion to dismiss was filed the next day.

court also noted that the plaintiff was bound by his counsel's concession that service on the state defendants was insufficient, citing *Mamudovski* v. *BIC Corp.*, 78 Conn. App. 715, 727, 829 A.2d 47 (2003), appeal dismissed, 271 Conn. 297, 857 A.2d 328 (2004). The court, therefore, denied the plaintiff's motion to reargue. The plaintiff appealed.

During oral argument before this court, the plaintiff repeated the arguments he made in the trial court but also argued that the action had been brought against the state defendants in their individual and official capacities. Consequently, we asked the plaintiff why the trial court had found that "it is undisputed that all of the state defendants were sued in their individual capacity." The plaintiff represented that the state defendants were served in their individual and official capacities, as demonstrated in the record. During his argument, the assistant attorney general represented that the cover page of the complaint he used to draft the motion to dismiss indicated that the state defendants were being sued in their individual capacities only.

Following oral argument, the state defendants filed a motion for permission to file a motion for rectification or articulation. In the motion for permission to file a motion for rectification or articulation, the assistant attorney general represented that the first page of the complaint served on the state defendants "specifically states that the thirty-three . . . [state defendants] were being sued in their individual capacity only. . . . That page of the Complaint is attested to by Constable Haraghey. . . . The first page of the Complaint filed by the plaintiff in the Windham Superior Court is different than the first page of the Complaint served on the defendants by Constable Haraghey at the Office of the Attorney General. . . . In fact, the first page of the Complaint filed by the plaintiff in Superior Court does not include the attestation by Constable Haraghey. Also,

the first page of the Complaint filed by the plaintiff in Superior Court indicates that the thirty-three . . . [state defendants] are sued in their individual and official capacities." Moreover, the trial court "held that it was undisputed that all of the state defendants were served in their individual capacity." The assistant attorney general also represented that during oral argument on appeal, he "first discovered the above-described discrepancy in the two complaints." In their motion for rectification or articulation, the state defendants requested that "the Superior Court . . . include the operative complaint served on the defendants in the Court Record, and, if deemed necessary, opine on the significance of said complaint on its decision." The plaintiff objected to the motion for permission to file a motion for rectification or articulation. We granted the state defendants' motion for permission to file a motion for rectification or articulation.[7]

The court held a hearing on April 6, 2010, which was continued until May 12, 2010, and issued its memorandum of decision on June 2, 2010. The court set out the following factual findings. "In their motion for articulation, the state defendants included the served complaint. The first page includes an attestation from Harold Haraghey, Jr., town of Hampton constable, who state[d]: 'I attest that this document is a true copy of the original.' At the April 6, 2010 hearing, the plaintiff

[7] Subsequently, the plaintiff also filed a motion for permission to file a motion for rectification in which he represented that "[a]t [the] December 7, 2009 oral argument, the State Defendants-Appellees claimed to have just realized that they face official capacity suit. A *First Revised Complaint*, however, comports with the *Complaint* in the *Record* by again listing the State Defendants-Appellees as sued in both their individual and official capacities. The *First Revised Complaint* should therefore serve as the operative *complaint* in this case." (Emphasis in original.) We granted the motion for permission to file motion for rectification and ordered the motion for rectification referred to the trial court "for any action the trial court deems necessary."

acknowledged the attestation, but did not admit that the document was the served complaint. He simply referred to the filed complaint and the first revised complaint of July 3, 2008, and argued that it was the operative complaint." In a footnote, the court stated: "At the April 6, 2010 hearing, the plaintiff attempted to prove that the state defendants knew about the dual capacity claims long before the matter arose at the Appellate Court. Indeed, he introduced copies of the two complaints filed in the United States District Court showing the state defendants being sued in both capacities as well as referencing the first revised complaint dated July 3, 2008, filed in this court as well as other documents. While he is correct that the dual capacity issue has been apparent for some time, this argument misses the point."

The court further found that on May 12, 2010, "Haraghey testified that the served complaint was not the one returned to court. Rather, he averred that he served the version of the complaint that indicates that the state defendants were being sued only in their individual capacity. . . . [T]he state defendants attached a copy of that complaint to their motion for articulation complete with Haraghey's attestation . . . ." According to Haraghey, "the plaintiff accompanied him when he served the box of documents, previously provided to him by the plaintiff's father, at the attorney general's office at 55 Elm Street in Hartford. . . . [Haraghey] did not personally return the documents to court, but believed that the plaintiff returned them." The court further found that "somehow, the filed complaint indicates that the state defendants are being sued in both capacities and, in the return of service, Haraghey attests that he 'left true and attested copies of the within original Writ, Summons, and Complaint' with the attorney general's office. Thus, it would appear that the filed complaint is not a true copy of that which was served."

At the April 6, 2010 hearing, the court noted that the state defendants properly sought to dismiss the action for lack of personal jurisdiction on the basis of the complaint that was served on them. In its memorandum of decision, the court framed the issue as "whether the served complaint or the filed complaint controls [the trial court's] action." The plaintiff argued that the variance between the two versions of the complaint was circumstantial and should be overlooked pursuant to General Statutes § 52-123.[8] The court disagreed; so do we.

In resolving the issue, the court properly observed that the plaintiff is not a member of the bar and that courts are to be solicitous of pro se parties. "[A]lthough we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law." (Internal quotation marks omitted.) *Watkins* v. *Thomas*, 118 Conn. App. 452, 456, 984 A.2d 106 (2009). Thus, the court concluded, courts and the parties are bound by the laws and rules that govern our judicial system.

In its memorandum of decision, the court cited § 52-57 (a), which provides that "[e]xcept as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state" and stated that "due process requires that what is returned to court be exactly the same as what is served on a defendant: a 'true and attested copy' of the complaint and any other attached papers. See *Denison* v. *Crafts*, 74 Conn. 38, 39, 49 A. 851 (1901) (sustaining demurrer where plaintiff

---

[8] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

altered writ between issuance and service and rejecting argument that plaintiff was 'ignorant of our forms of procedure, and compelled to conduct his own case under circumstances that might well invite all permissible indulgence of the court'); *DeGroff* v. *Sheketoff*, 16 Conn. Sup. 142, 143 (1949) (sustaining plea in abatement where change was made to writ after service). 'It is important . . . that there be no material variation between the original signed by the issuing authority and the copy read to or left with the defendant . . . . [T]here have been cases where the writ was intentionally altered (rather than corrected) after issuance, and such alterations make the service invalid.' E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 18, p. 37. Such is the case here—service is invalid because of the alteration."

On the basis of Haraghey's testimony, the court found that notwithstanding the allegations contained in the complaint and the filing of the revised complaint, the plaintiff's failure to return a "true" copy of the writ of summons and complaint controls the outcome of the motion to dismiss. The operative complaint is the served complaint. We agree with the court that the operative complaint is the complaint that was served on the state defendants.

We also agree that the court properly dismissed the action against the state defendants due to insufficient service. Construction of a complaint is a question of law; see *O'Halloran* v. *Charlotte Hungerford Hospital*, 63 Conn. App. 460, 463, 776 A.2d 514 (2001); which we review de novo. *Jacaruso* v. *Lebski*, 118 Conn. App. 216, 221, 983 A.2d 45 (2009). Moreover, parties are bound by their pleadings. *O'Halloran* v. *Charlotte Hungerford Hospital*, supra, 463. The complaint served on the state defendants alleges that they were being sued in their individual capacities, which required that they be served at their usual places of abode. The plaintiff has

acknowledged that service was made on a secretary at the office of the attorney general, not at the state defendants' usual places of abode. We also agree that the state defendants were not collaterally estopped from filing their motion to dismiss, nor did they waive the right to do so. The court found that the motion to dismiss was filed on the same day that the assistant · attorney general filed his appearance in accordance with Practice Book § 10-30.

The judgment is affirmed.

In this opinion the other judges concurred.